Thomas J. Mirabile, J.
These are two motions, one brought by the plaintiff for partial summary . judgment and a cross motion on behalf of the defendants also seeking partial summary judgment.
The plaintiff in this action has set forth in his complaint two causes of action, (1) to recover security deposited by the plaintiff with defendants and their predecessor in title pursuant to a written lease and (2) to recover the prorata reduction of insurance premiums paid by the plaintiff to the defendants pursuant to said written lease.
The defendants have interposed an answer wherein they set forth one affirmative defense and three counterclaims. (A) The affirmative defense alleges plaintiff tenant’s breach of lease. (B) The first and second counterclaims set forth in detail the various elements of the alleged damages claimed up to the date that the answer had been interposed and which they contend constitute a proper setoff to the security. (C) The third counterclaim constitutes damages claimed from January 15, 1963 to the termination of the lease, to wit, February 15, 1965.
The facts generally speaking are not in dispute. The lease was entered into on March 1, 1960 between the plaintiff tenant and defendants’ predecessor in title and the term of said lease was to have expired on February 15, 1965. The annual rental of the lease was $10,000 payable in equal monthly installments of $833.33 on the 15th of each month; pursuant to the terms of said lease the plaintiff deposited with landlord the sum of $5,000 as security and the receipt of such security is admitted by defendants ; the plaintiff herein pursuant to the terms of the lease did sublet said premises with the consent of the defendants to Trans America Paper Stock Corp. During tenancy of the said subtenant payments of the monthly rent were not paid timely and because of such late payments the defendants were compelled to and did commence summary proceedings to recover payment of rent for the months of January, February, March and April *211 of 1962, and after the commencement of each of the said proceedings the rents were paid by said subtenant. Because of said late payments of rent, the defendants landlord served a notice upon the tenant and subtenant dated April 11, 1962 to the effect that said late payments of rent constituted a violation of the obligation under the lease and required a correction of such violation by making payments of future rent on time. When the rent which became due on April 15, 1962 was not paid timely, the defendants landlord caused to be served on the tenant and subtenant another notice dated May 3,1962, which in substance said that the landlord elected to and did terminate the tenancy, said termination to be effective as of June 14, 1962.
On the 15th day of June, 1962 the defendants landlord instituted a summary holdover proceeding alleging in the petition that the terms of the tenancy expired on June 14, 1962. On the return day of said petition and precept a certain stipulation was entered into between all of the parties wherein the tenants and subtenants admitted all allegations in the petition and the warrant was stayed. Among other things, the said stipulation provided that the subtenant was to make certain payment on or before July 2, 1962, which payment was never made and the warrant was thereafter issued. The defendants were required to evict from the premises the subtenant on August 30, 1962 pursuant to the warrant, which warrant was executed by the Marshal. The defendants landlord rerented the said premises on January 15,1963 at a lower rental.
Plaintiff in its motion claims that even if all of defendants’ counterclaims arising prior to August 30, 1962, the date it actually vacated the premises, are set off against the amount of the security, there will still be a balance in its favor, for which it asks partial summary judgment; in addition it asks partial summary judgment for that part of the insurance premiums it has already paid which are attributable to the period subsequent to August 30, 1962. Defendants, in their cross motion, contend that in unpaid rents alone, from June 14, 1962, the termination date of their notice, until the present time, there is due and owing a total sum in excess of the security, for which total sum thev ask partial summary judgment.
There are four clauses in the lease which pertain to nonpayment of rent, to tenant’s liability and to the security:
8th. That if the said premises, or any part thereof shall be deserted or become vacant during said term, or if any default be made in the payment of the said rent or any part thereof, or if any default be made in the performance of any of the covenants herein contained, the Landlord or representatives may re-enter the said premises by force, summary proceedings or otherwise, and remove all persons therefrom, without being liable to prosecution therefor, *212 and the Tenant hereby expressly waives the service of any notice in writing of intention to re-enter, and the Tenant shall pay at the same time as the rent becomes payable under the terms hereof a sum equivalent to the rent reserved herein, and the Landlord may rent the premises on behalf of the Tenant, reserving the right to rent the premises for a longer period of time than fixed in the original lease without releasing the original Tenant from any liability, applying any moneys collected, first to the expense of resuming or obtaining possession, second, to restoring the premises to a rentable condition, and then to the payment of the rent and all other charges due and to grow due to the Landlord, any surplus to be paid to the Tenant, who shall remain liable for any deficiency.
15th. The Tenant has this day deposited with the Landlord the sum of $5,000.00 as security for the full and faithful performance by the Tenant of all the terms, covenants and conditions of this lease upon the Tenant’s part to be performed, which said sum shall be returned to the Tenant after the time fixed as the expiration of the term herein, provided the Tenant has fully and faithfully carried .out all of said terms, covenants and conditions on Tenant’s part to be performed. In the event of a bona fide sale, subject to this lease, the Landlord shall have the right to transfer the security to the vendee for the benefit of the Tenant and the Landlord shall be considered released by the Tenant from all liability for the return of such security; and the Tenant agrees to look to the new Landlord solely for the return of the said security, and it is agreed that this shall apply to every transfer or assignment made of the security to a new Landlord. Security will bear interest at the rate paid by the Brevoort Savings Bank of Brooklyn.
17th. It is expressly understood and agreed that in, case the demised premises shall be deserted or vacated, or if default be made in the payment of the rent or any part thereof as herein specified, or if, without the consent of the Landlord, the Tenant shall sell, assign, or mortgage this lease or if default be made in the performance of any of the covenants and agreements in this lease contained on the part of the Tenant to be kept performed, or if the Tenant shall fail to comply with any of the statutes, ordinances, rules, orders regulations and requirements of the Federal, State and City Government or of any and all their Departments and Bureaus, applicable to said premises, or hereafter established as herein provided, or if the tenant shall file a petition in bankruptcy or arrangement, or be adjudicated a bankrupt, or make an assignment for the benefit of creditors or take advantage of any insolvency act, the Landlord may, if the Landlord so elects, at any time thereafter terminate this lease and the term hereof, on giving to the Tenant five days’ notice in writing of the Landlord’s intention so to do, and this lease and the term hereof shall expire and come to an end on the date fixed in such notice as if the said date were the date originally fixed in this lease for the expiration hereof. Such notice may be given by mail to the Tenant addressed to the demised premises.
23rd. In the event that the relation of the Landlord and Tenant may cease or terminate by reason of the re-entry of the Landlord under the terms and covenants contained in this lease or by the ejectment of the Tenant by summary proceedings or otherwise, or after the abandonment of the premises by the Tenant, it is hereby agreed that the Tenant shall remain liable and shall pay in monthly payments the rent which accrues subsequent to the re-entry by Landlord, and the Tenant expressly agrees to pay as damages for the breach of the covenants herein contained, the difference between the rent reserved and the rent collected and received, if any, by the Landlord during the remainder of the unexpired term, as the amounts of such difference or deficiency shall from time to time be ascertained; and it is mutually agreed *213 between Landlord and Tenant that the respective parties hereto shall and hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties against the other on any matters whatsoever arising out of or in any way connected with this lease, the Tenant’s use or occupancy of said premises, and/or any claim of injury or damage.
A determination of the two motions depends upon an answer to this question: Does the landlords? right to retain the security under clause 15 survive their election under clause 17 to terminate the lease ?
A careful reading of the above four clauses leads to the conclusion that the security clause does not survive.
Clauses 8 and 17 anticipate the situation in which the tenant fails to pay rent or breaches other covenants of the lease. If this happens, the landlord has reserved the right to regain possession of the premises and relet to a third party. When the landlord relets, he can treat the third party as an agent of the original tenant, holding the tenant liable for any deficiency and paying him any surplus (cl. 8), or the landlord can “ terminate this lease and term hereof” (cl. 17). The latter alternative (cl. 17), severs the landlord-tenant relationship completely, absolving the landlord of the necessity of accounting to the tenant for any surplus, while at the same time absolving the tenant of any liability for future deficiencies. (Von der Horst v. Wolinsky, 137 Misc. 182.)
Both parties agree that the landlords served a notice of termination upon the tenant with an effective termination date of June 14, 1962. It is clear, then, that the landlords proceeded under clause 17 (Von der Horst v. Wolinsky, supra), and clause 8 can accordingly be dismissed from further consideration. In similar fashion, clause 23 can be dismissed, which encompasses a severance of the landlord-tenant relationship by means other than a written notice. (37-01-31st St. Realty Corp. v. Young, 134 N. Y. S. 2d 250.)
Clause 15 is the security clause: it provides that the security is i e turn able to the tenant1 ‘ after the time fixed as the expiration of the term herein ”. Noteworthy is the similarity in terminology between this and clause 17 which empowers the landlords to 61 terminate this lease and the term hereof ”. Equally noteworthy— for its absence — is any provision for the survivability of the tenant’s liability or of the landlords’ right to security, either in clause 15 or clause 17. And yet, such a provision does appear in both clause 8 (“ without releasing the original Tenant from any liability”) and clause 23 (“ it is hereby agreed that the Tenant shall remain liable ”). Therefore, by the terms of the lease itself, once the landlord elects to terminate under clause *214 17, he has terminated his rights under clause 15 as well. Stated in a different posture, a termination under clause 17 is a termination of the entire lease.
Had the tenant left the premises on June 14,1962, his liability and the landlords’ right to security would have ceased on that date. However, since the tenant remained until a warrant of dispossess was executed on August 30, 1962, his liability and the landlords’ right under the lease endured until the latter date.
Although there are some cases interpreting the effect of analagous clauses upon the survivability of security clauses, they can, with the exception of Von der Horst (supra) and Matter of Homann (45 F. 2d 481) be distinguished for one of two reasons. Either the lease contained words of express survivability (Halpern v. Manhattan Ave. Theatre Corp., 220 N. Y. 655), or the landlord never elected to terminate the lease (Lenco, Inc. v. Hirschfeld, 247 N. Y. 44; Rosenfeld v. Aaron, 248 N. Y. 437).
Von der Horst (supra) and later, Matter of Homann (supra) on the other hand, are very similar in fact to each other and to the present case. However, they come to opposite conclusions. This court sides with Von der Horst for two reasons, respectfully mindful of the fact that Matter of Homann was decided by the United States Circuit Court of Appeals. In the first place, the cases it relies on for the proposition that the security clause survives the landlord’s election to terminate the lease (Halpern, Lenco and Rosenfeld, supra) simply do not hold what the court said they held, for the reasons stated in the previous paragraph. Secondly, Matter of Homann was decided eight years before Erie R. R. Co. v. Tompkins (304 U. S. 64). The latter ease would at least create a question now as to whether a Federal court is at liberty to flatly disregard the prior decision of such a New York court as decided the Von der Horst case.
The defendants landlord also contends that by virtue of the stipulation entered into between the parties in the summary holdover proceeding, the lease has been amended and the tenancy continued. I doubt very much if such stipulation can destroy or retract the effect of the notice which terminated the lease as of June 14, 1962 without a specific provision therein for such retraction. But even if such stipulation could be interpreted as an attempt to amend or extend the terms of the lease the said stipulation was conditional and never became effective since the undertenant failed to make the payment of July 12, 1962.
Therefore, plaintiff’s motion is granted to the following extent: (1) defendants’ third counterclaim which concerns claims arising after August 30, 1962 is dismissed for legal *215 insufficiency; (2) partial summary judgment is awarded to plaintiff in the amount of $898. This sum is arrived at by adding all of defendants’ counterclaims arising prior to August 30, 1962 ($3,940.42), plus $161.58 (unpaid fire insurance premium for the period June 19-August 30, as per affidavit of Joel Sterling, dated February 23,1963) and subtracting this total from $5,000, the amount of the security. Since there will have to be a trial as to the balance, questions of interest, which should be minimal, will be determined at that time. Defendants’ cross motion for partial summary judgment is denied.
Settle order on notice, providing for the entry of judgment accordingly and for a severance of the action as to the balance in suit.